MYLES E. FLINT II
Senior Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044-7611
(202) 532-3377

John Basiak, Civil Chief
Alex Silagi, Deputy Civil Chief
District of New Jersey
United States Attorney's Office
970 Broad Street, 7th Floor
Newark, New Jersey 07102
(973) 353-6001

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

Plaintiff,

v.

ENVIRONMENTAL RESOURCE HOLDINGS, LLC,

Defendant.

Civil Action No.

**COMPLAINT**

The United States of America, by the authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Regional Administrator of the United States Environmental Protection Agency (EPA), Region 2, files this complaint and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action brought under Section 106 of the Comprehensive Environmental Response, Compensation, and Liability Act, as amended, 42 U.S.C. § 9606 ("CERCLA").

2. In this action, the United States seeks performance by Environmental Resource Holdings, LLC ("ERH") of certain response actions selected by EPA in the March 3, 2016, Record of Decision for Operable Unit 2 and the September 28, 2021, Record of Decision for Operable Unit 4 of the Diamond Alkali Superfund Site ("Site").

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action and over the parties under 28 U.S.C. §§ 1331 and 1345 and Sections 106(a) and 113(b) of CERCLA, 42 U.S.C. §§ 9606(a) and 9613(b).

4. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because the releases or threatened releases of hazardous substances that gave rise to this claim occurred in this district, and because the Site is located in this district.

## DEFENDANT

5. Defendant ERH is a limited liability company organized under the laws of Texas. ERH is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

6. Defendant falls within one or more of the classes of liable persons described in Section 107(a)(1)-(4) of CERCLA, 42 U.S.C. § 9607(a)(1)-(4).

## STATUTORY BACKGROUND

7. CERCLA was enacted in 1980 to provide a comprehensive governmental mechanism for abating releases and threatened releases of hazardous substances and other pollutants and contaminants, and for funding the costs of such abatement and related enforcement activities, which are known as "response" actions, 42 U.S.C. §§ 9604(a), 9601(25).

8. Section 104(a)(1) of CERCLA, 42 U.S.C. § 9604(a)(1), provides:

> Whenever (A) any hazardous substance is released or there is a substantial threat of such a release into the environment, or (B) there is a release or substantial threat of release into the environment of any pollutant or contaminant which may present an imminent and substantial danger to the public health or welfare, the President is authorized to act, consistent with the national contingency plan, to remove or arrange for the removal of, and provide for remedial action relating to such hazardous substance, pollutant, or contaminant at any time (including its removal from any contaminated natural resource), or take any other response measure consistent with the national contingency plan which the President deems necessary to protect the public health or welfare or the environment.

9. For CERCLA response actions and enforcement purposes, the Administrator of EPA is the President's delegate, as provided in operative Executive Orders, and, within certain limits, the Regional Administrators of EPA have been re-delegated this authority. In EPA Region 2, this authority has been

further delegated to the Director of the Superfund and Emergency Management Division.

10. Under section 106 of CERCLA, 42 U.S.C. § 9606:

> [W]hen the President determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility, he may secure such relief as may be necessary to abate such danger or threat …

11. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in pertinent part:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this Section –
>
> (1) the owner and operator of a vessel or a facility,
>
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
>
> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or operated by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
>
> (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of

> response costs, of a hazardous substance, shall be liable for --
>
> (A) all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the National Contingency Plan . . .

12. Under Section 101(9) of CERCLA, 42 U.S.C. § 9601(9), the term "facility" means (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located.

13. Under Section 101(22), of CERCLA, 42 U.S.C. § 9601(22), the term "release" means any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment.

14. Under Section 101(29) of CERCLA, 42 U.S.C. § 9601(29), the term "disposal" includes, among other things, the "discharge, deposit, injection, dumping, spilling, leaking, or placing" of wastes into or on any land or water so that such wastes or any constituent thereof "may enter the environment or be emitted into the air or discharged into any waters, including ground waters."

## GENERAL ALLEGATIONS

### The Site

15. The Diamond Alkali Superfund Site consists of the former Diamond

Alkali facility at 80-120 Lister Avenue in Newark, New Jersey, the Lower Passaic River Study Area ("Study Area"), including the lower 8.3 miles of the Lower Passaic River, the Newark Bay Study Area, and the areal extent of contamination.

16. The Study Area generally includes the 17-mile, tidal portion of the Passaic River from Dundee Dam as it is located in or flows through Essex, Hudson, Passaic, and Bergen counties to Newark Bay.

17. The Diamond Alkali Company and other corporate predecessors of Occidental Chemical Company operated a manufacturing facility located at 80 Lister Avenue in Newark, New Jersey, which produced, among other products, the defoliant chemical known as "Agent Orange." A byproduct of the manufacturing processes was 2,3,7,8-TCDD (2,3,7,8-tetrachlorodibenzo-p-dioxin, or "dioxin"), which was released into the Passaic River.

18. The lower 8.3 miles of the Lower Passaic River are located in a highly developed urban area that includes commercial, industrial, residential, and recreational use.

19. EPA placed the Diamond Alkali Superfund Site on the National Priorities List in 1984.

20. To manage cleanup operations of the Site, EPA has divided response actions for the Site into four portions referred to as "Operable Units." Additional Operable Units may be designated in the future if additional response actions are selected.

21. Operable Unit 1 of the Site ("OU1") consists of the response action required or to be required by EPA to address the contamination at the former Diamond Alkali facility at 80-120 Lister Avenue in Newark, New Jersey.

22. Operable Unit 2 of the Site ("OU2") consists of the response action required or to be required by EPA to address the contamination in the lower 8.3 miles of the Lower Passaic River. The lower 8.3 miles of the Lower Passaic River extends from the river's confluence with Newark Bay at River Mile ("RM") 0 to RM 8.3 near the border between the City of Newark and Belleville Township.

23. Operable Unit 3 of the Site ("OU3") consists of the response action required or to be required by EPA to address the contamination in the Newark Bay Study Area, including Newark Bay and portions of the Hackensack River, Arthur Kill and Kill van Kull. EPA is overseeing a Remedial Investigation/Feasibility Study ("RI/FS") for OU3.

24. Operable Unit 4 of the Site ("OU4") consists of the response action required or to be required by EPA to address the contamination in the full 17 miles of the Study Area, bounded at the upper end by the Dundee Dam at RM 17.4, and bounded at the lower end by the confluence of the Lower Passaic River and Newark Bay at RM 0, including an interim response action required or to be required by EPA to address contaminated sediments in the upper 9 miles of the Study Area.

25. Based on studies conducted at the Site, EPA concluded that the lower 8.3 miles of the Lower Passaic River contained the bulk of the contaminated sediment that is the source of the most risk associated with the Study Area. As a

result, EPA conducted an Agency-funded Remedial Investigation/Focused Feasibility Study ("RI/FFS") which showed that contaminated sediments in the lower 8.3 miles of the Lower Passaic River are a major source of contamination to the rest of the River largely due to sediment mixing caused by the tidal nature of the Lower Passaic River.

26. The sediments of the lower 8.3 miles of the Lower Passaic River are contaminated with, among other things, dioxins and furans, polychlorinated biphenyls ("PCBs"), polycyclic aromatic hydrocarbons ("PAHs"), dichlorodiphenyl-trichloroethane ("DDT"), dieldrin and other pesticides, and mercury, lead, copper and other metals. These and other hazardous substances are commingled in the sediments.

27. Following the RI/FFS, EPA selected an OU2 remedy ("OU2 Remedy"), which is identified in an EPA decision document, dated March 3, 2016, referred to as the Record of Decision for the Lower 8.3 Miles of the Lower Passaic River. The Record of Decision selected a final remedy for the sediments of the lower 8.3 miles and an interim remedy for the water column.

28. The OU2 Remedy includes, but is not limited to the following: 1) construction of an engineered cap over the river bottom of the lower 8.3 miles of the Study Area bank to bank; 2) dredging of the river so the cap can be placed without increasing the potential for flooding and to allow for the continued use of the federally-authorized navigation channel in the 1.7 miles of the river closest to Newark Bay; 3) reconstructing dredged mudflat areas and restoring mudflat

habitat; 4) dewatering at an Upland Processing Facility and off-site disposal of dredged material; 5) institutional controls to protect the cap and enhanced outreach to increase awareness of the New Jersey Department of Environmental Protection's prohibitions on fish and crab consumption; and 6) long term monitoring and maintenance. The estimated cost of the remedy provided in the OU2 Record of Decision is $1.38 billion. Implementation of the OU2 Remedy requires construction of one or more Upland Support Facilities, as well as baseline sampling.

29. Following the selection of an OU2 remedy, EPA selected an interim remedy for OU4 ("OU4 Interim Remedy"), which is identified in an EPA decision document, dated September 28, 2021, referred to as the Record of Decision for the upper 9 miles of the Study Area.

30. The OU4 Interim Remedy consists of dredging and capping to control sediment sources of 2,3,7,8-tetrachlorodibenzo-p-dioxin (2,3,7,8-TCDD), the most toxic form of dioxin, and PCBs by remediating surface sediments with elevated concentrations of those hazardous substances and controlling subsurface sediments that might be exposed due to erosion. The other contaminants of concern in the upper 9 miles, as identified by the risk assessments performed for the Study Area, are DDT, other dioxins/furans, dieldrin, copper, lead, mercury (including methyl mercury), and PAHs. Contaminants other than 2,3,7,8-TCDD and total PCBs will be addressed during the OU4 Interim Remedy to the extent they are collocated with areas targeted for remediation based on concentrations of 2,3,7,8-TCDD and total PCBs, or will be addressed in the final remedy, as needed. The estimated cost of the

interim remedy provided in the OU4 ROD is $441 million. The OU4 ROD provides that facility capacity and accessibility evaluations will be conducted during the remedial design to identify locations for sediment processing, including the sediment processing facility for the material dredged from the lower 8.3 miles, which is the Upland Processing Facility.

31. The OU2 Remedial Action and the OU4 Interim Remedial Action both include the removal of sediment from the river and for dredged material to be barged or pumped to an Upland Processing Facility. The OU2 and OU4 remedies working together address the releases contributing to the human health and ecological risks to the Study Area.

32. The remedial design for the OU2 Remedy was completed on May 6, 2024. As of July 1, 2026, the remedial design for the OU4 Interim Remedy is more than halfway complete.

33. The Site, including the Study Area, is a location where hazardous substances have been deposited, stored, disposed of, placed or otherwise come to be located, and therefore it is a "facility" as defined in Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

34. The 2,3,7,8-TCDD, other dioxin and furans, PCBs, DDT, dieldrin and other pesticides, PAHs, copper, lead, mercury and other metals, which have come to be located at the Site (including the Study Area), are "hazardous substances" within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

**The Initial Remedial Work**

35. The following actions (collectively referred to hereinafter as the "Initial Remedial Work") must be implemented before initiation of the dredging and capping phases of the OU2 and OU4 Remedy:

a. Construction of the Upland Processing Facility;

b. Construction of the Upland Support Facilities;

c. Completion of water column sampling in OU2 before the start of dredging to support the dredging resuspension monitoring program;

d. Completion of air quality sampling, odor monitoring, and noise monitoring before the start of construction so that construction-related impacts can be detected in the environmental monitoring program to be implemented during further remedial action construction; and

e. Completion of fish and crab tissue sampling in OU2 before the start of dredging to support the long-term observational monitoring to be implemented after OU2 remedial construction is completed.

36. The Initial Remedial Work is part of the OU2 Remedy, and implementation of the OU4 Remedy will require use of the Upland Processing Facility and Upland Support Facilities.

37. In connection with the Initial Remedial Work, the United States has incurred and will continue to incur "response costs" as defined in Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), including enforcement costs. These response costs are not inconsistent with the National Oil and Hazardous Substances Pollution

Contingency Plan ("NCP") promulgated under Section 105 of CERCLA, 42 U.S.C. § 9605, and codified at 40 C.F.R. Part 300.

**The Defendant**

38. Defendant has represented that it has retained the liabilities of  to corporate entities that, from the mid-1940s to approximately 1969, disposed of hazardous substances at and from the manufacturing facility located at 80 Lister Avenue in Newark, New Jersey (the "Lister Plant") and is therefore responsible for the liabilities associated with the Lister Plant operations. These corporate entities included, among others: Kolker Chemical Works, Inc.; Diamond Alkali Company; Diamond Shamrock Corporation ; Diamond Shamrock Chemicals Company ("DSCC"); and Occidental Chemical Corporation, organized under the laws of New York ("OCC-NY").

39. Beginning in the mid-1940s, Kolker Chemical Works, Inc. manufactured chemicals and herbicides at the Lister Plant.

40. Between the mid-1940s and 1969, Defendant's predecessors operated the Lister Plant for the manufacture of the chemicals 2,4,5-trichlorophenol ("2,4,5-TCP") and the herbicides 2,4-dichlorophenoxyacetic acid ("2,4-D") and 2,4,5-trichlorophenoxyacetic acid ("2,4,5-T"), ingredients in the defoliant known as "Agent Orange," among other products. A by-product of these manufacturing processes was 2,3,7,8-TCDD.

41. Throughout their period of operating the Lister Plant, Defendant's predecessors directly discharged waste effluents from chemical production, including 2,3,7,8-TCDD, from the Lister Plant to the Lower Passaic River.

42. The operations at the Lister Plant have been the subject of litigation. In September 1984, one of Defendant's legal predecessors, DSCC, filed suit against Aetna Casualty & Surety Company and 125 other insurers in New Jersey Superior Court. *Diamond Shamrock Chemicals Co. v. The Aetna Casualty & Surety Co. et al.*, 258 N.J. Super. 167, 180 (1992).

43. After a 20-day trial, the judge concluded that DSCC, as a matter of corporate policy, intentionally and continuously discharged dioxin, DDT and other hazardous substances from the Lister Plant into the Passaic River during the entire period of its plant operations. This conclusion was upheld on appeal. *Id.* at 211.

44. In 2005, the State of New Jersey sued one of Defendant's legal predecessors, OCC-NY, under the New Jersey Spill Compensation and Control Act. In *New Jersey Department of Environmental Protection et al. v. Occidental Chemical Co., et al.*, Civ. No. L9869-05, New Jersey Superior Court, Judge Lombardi of the New Jersey Superior Court awarded the State of New Jersey summary judgment, determining that OCC-NY was jointly and severally liable under the New Jersey Spill Compensation and Control Act for all cleanup and removal costs incurred by New Jersey with respect to contamination at the Diamond Alkali Superfund Site, and entered a declaratory judgment decreeing that OCC-NY is liable for all future response costs of New Jersey.

45. In 2018, OCC-NY sued numerous other entities under CERCLA for cost recovery and contribution based on response costs that it allegedly had expended and would expend to address releases and threatened releases of hazardous substances at the Site. In *Occidental Chemical Corporation v. 21st Century Fox America, et al.*, Civ. No. 18-11273, Dkt. No. 1105 (Letter Order) (D.N.J. Sept. 11, 2020), Judge Madeline Cox Arleo granted the defendants' motion for summary judgment finding OCC-NY liable under CERCLA as a legal successor to DSCC.

46. Defendant ERH has represented that it has retained the liabilities of OCC-NY due to a series of corporate transactions that occurred in September 2025.

47. The Lister Plant is or was a "facility" from which there have been "releases" and threatened releases of "hazardous substances" to the Site, including this Study Area, as those terms are defined in Section 101 of CERCLA, 42 U.S.C. § 9601. The releases or threatened releases of hazardous substances from the Lister Plant included, but are not limited to, one or more of the following: 2,3,7,8-TCDD and DDT.

48. Defendant's predecessors (i) owned and/or operated the Lister Plant at the time of disposal of hazardous substances, and there were releases of hazardous substances from the Lister Plant to the Site, including the Study Area, and (ii) arranged for disposal of hazardous substances that it owned or possessed, through ditches, trenches, pipes, conduits and outfalls to the Site, including the Study Area.

**FIRST CLAIM FOR RELIEF**

*United States' Claim for Injunctive Relief*

49. Paragraphs 1 through 48 are re-alleged and incorporated herein by reference.

50. Defendant is within, or is a successor to a person who is or was within, one or more of the classes of liable persons described in Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), with respect to a facility from which there have been releases or threatened releases of hazardous substances to the Site, including the Study Area.

51. The President, through his delegate at EPA Region 2, has determined that there is or may be an imminent and substantial endangerment to the public health and welfare or the environment because of actual or threatened releases of hazardous substances at or from the Study Area.

52. Under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), Defendant is liable for injunctive relief to abate the danger or threat presented by a release or a threatened release of hazardous substances into the environment at or from the Site, including the Study Area.

53. EPA has determined that the Initial Remedial Work is necessary to abate the danger or threat at or from the Study Area.

54. Therefore, under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), Defendant is liable to undertake the Initial Remedial Work.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Enter judgment in favor of the United States, under Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606, 9607(a), holding the Defendant jointly and severally liable for performance of the Initial Remedial Work;

b. Enter an order under Section 106 of CERCLA, 42 U.S.C. § 9606, requiring Defendant to perform the Initial Remedial Work;

c. Award the United States its costs and fees in this action; and

d. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

s/ *Myles E. Flint II*
Myles E. Flint II, Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
(202) 532-3377
Myles.Flint@usdoj.gov

ROBERT FRASER
United States Attorney
District of New Jersey

ALEX SILAGI
Assistant United States Attorney
District of New Jersey
United States Attorney's Office
970 Broad Street, 7th Floor
Newark, New Jersey 07102
(973) 353-6001

OF COUNSEL:

Sarah Flanagan
Juan Fajardo
Kathryn DeLuca
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 2
290 Broadway
New York, NY 10007

CERTIFICATION UNDER LOCAL CIVIL RULE 11.2

In accordance with 28 U.S.C. § 1746, I hereby certify, under penalty of perjury, that the matter in controversy in the foregoing Complaint is not the subject of any other action pending in any court, or any pending arbitration or administrative proceeding.

The matter captioned *United States v. Alden Leeds, et al.*, Case No. 2:22-cv-07326 (D.N.J.), which is assigned to Judge Arleo, is related to the matter in controversy in the foregoing Complaint, in that it concerns a similar subject matter and OCC-NY has intervened in that matter. Appeals from Judge Arleo's order in this matter, Case No. 2:22-cv-07326, Dkt. No. 394, are currently pending in the U.S. Court of Appeals for the Third Circuit (Nos. 25-1049 and 25-1227).

Similarly, the matter captioned *Occidental Chemical Corporation v. 21st Century Fox America, Inc.*, et al., Case No. 2:18-cv-11273 (D.N.J.), and the matter captioned *Occidental Chemical Corporation v. Givaudan Fragrances Corporation, et al.*, Case No. 2:23-cv-1699 (D.N.J.), which are assigned to Judge Arleo and currently stayed, are related to the matter in controversy in the foregoing Complaint, in that they concern a similar subject matter and involve some of the same parties.

Likewise, the matter captioned *BASF Catalysts LLC, et al. v. Occidental Chemical Corporation, (a Texas Corporation)*, Case No. 2:26-cv-01226 (D.N.J.), which is also assigned to Judge Arleo, is related to the matter in controversy because it concerns a similar subject matter.

*/s/ Myles E. Flint II*
MYLES E. FLINT II
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
(202) 532-3377
Myles.Flint@usdoj.gov